(651 P.2d 949)

No. 54,217

STATE OF KANSAS, *Appellee,* v. DONALD D. GIBSON, *Appellant.*

Opinion filed September 23, 1982.

*Gene H. Sharp,* of Vance, Hobble, Neubauer, Nordling, Sharp & McQueen, P.A., of Liberal, for appellant.

*Mickey Carl Moorman,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: Defendant appeals from his conviction for operating a tractor and semitrailer with a combined gross weight exceeding that authorized by K.S.A. 1980 Supp. 8-1909. This appeal concerns the amount of the fine imposed.

When arrested, defendant was driving a truck with an authorized gross weight of 85,500 pounds. The maximum gross weight for a vehicle or combination of vehicles in Kansas is 80,000 pounds on the interstate system and 85,500 pounds on other routes. The parties stipulated the tractor-trailer had a gross weight of 148,200 pounds—62,700 pounds overweight. The trial judge applied the fine schedule set forth in K.S.A. 1980 Supp. 8-1901(c) and fined the defendant $6,270.

1. Legislative Intent.

The defendant argues that the maximum fine the legislature has authorized for a class A misdemeanor is $2,500 and that the legislature did not intend a fine for an unclassified misdemeanor to exceed the maximum fine for a class A misdemeanor. K.S.A. 21-4503(2)(d), which establishes permissible fines for all crimes, states:

"(2) A person who has been convicted of a misdemeanor may . . . be sentenced to pay a fine which shall be fixed by the court as follows:

. . . ."

"(d)  For an unclassified misdemeanor, any sum authorized by the statute that defines the crime  .  .  .  ."

Section (h) of the Judicial Council comment to K.S.A. 21-4503 states:

"Unclassified crimes are those which are defined and made punishable in chapters other than the crimes act. There are more than 1500 such offenses, found in virtually every chapter of the statute book. These are mainly intended to implement regulatory legislation and are not appropriate subjects for a criminal code. Hence, this revision of the crimes act does not affect them either as to content or penalty."

We are of the opinion the legislature did not intend the maximum fine for an overweight violation under K.S.A. 1980 Supp. 8-1901(c) to be limited by the maximum fine for a class A misdemeanor ($2,500).

2.  Interpretation of Fine Schedule.

K.S.A. 1980 Supp. 8-1901(c) provides for a fine in "an amount equal to the amount determined by applying the following schedule for each pound in excess of the lawful limit:

| Pounds Overweight | Rate of Fine |
| --- | --- |
| up to 1000 . . . . . . . . . . . . . . . . . | $25.00 |
| 1001 to 2000 . . . . . . . . . . . . . . | 3¢ per pound |
| 2001 to 5000 . . . . . . . . . . . . . . | 5¢ per pound |
| 5001 to 7500 . . . . . . . . . . . . . . | 7¢ per pound |
| 7501 and over . . . . . . . . . . . . . . | 10¢ per pound" |

The trial court multiplied the pounds in excess of the lawful limit by ten cents. Defendant argues the trial judge erred in not applying the schedule in increments; i.e., the first 7,500 would have been at lower, graduated rates. As we compute the difference involved, if defendant is correct, the fine imposed would be $370 less than that imposed by the trial judge.

In reviewing the legislative history of K.S.A. 1980 Supp. 8-1901, a maximum fine of $1,000 for a weight violation was proposed. (See Report on Kansas Legislative Interim Studies to the 1980 Legislature, Special Committee on Transportation, Re Proposal No. 37, which was presented in the form of Senate Bill No. 523.) The Senate Committee on Transportation and Utilities proposed that the maximum fine be raised to $2,000. The House Transportation Committee then proposed a fine schedule similar to the one ultimately adopted. In the House subcommittee draft, a third column (entitled "Range of Fines") was included, which evidenced the subcommittee's understanding of how the "fine

schedule" should be applied, and the committee example is identical to the way the trial court applied the fine schedule here. The legislative history shows an intent on the part of the legislature to apply the maximum applicable fine per pound figure to the entire gross overweight figure.

We recognize the rules concerning strict construction of a penal statute; thus, even though the legislature may have intended one result, if it uses language inconsistent with the result it intended, the accused is given the benefit of the doubt. The strict construction rule, however, simply means ordinary words are to be given their ordinary meaning; it does not permit or justify a disregard of manifest legislative intent appearing from plain and unambiguous language. *State v. Howard,* 221 Kan. 51, 557 P.2d 1280 (1976).

As we view the statutory language used, it is singular and thus provides for only one rate of fine per pound. In our opinion, the language used is plain and unambiguous and the trial court correctly applied the fine schedule by multiplying the rate of fine applicable to the entire gross overweight poundage without first applying the lesser rate of fine figures in increments to the first 7,500 pounds of gross overweight.

3. Judicial Discretion.

Defendant contends that K.S.A. 21-4607(3) requires a trial judge to use discretion in determining the amount of a fine, and the ABA Standards Relating to Sentencing Alternatives and Procedures, § 2.1 (1974 Supp.) states that legislatures should not specify a mandatory sentence and thus the mandatory fine schedule of K.S.A. 1980 Supp. 8-1901 is unconstitutional. Those arguments were made in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978), and rejected by the Supreme Court. Although *Freeman* considered the mandatory minimum sentence requirements for certain crimes in which the defendant used a firearm, we deem the reasoning analogous to that applicable in this case and the holding in *Freeman* controls that issue here.

4. Separation of Powers Doctrine.

Defendant argues the mandatory sentencing provisions of K.S.A. 1980 Supp. 8-1901(c) constitute a legislative encroachment on the judicial sentencing functions in violation of the separation of powers doctrine. We disagree.

Two principles of law appear to be applicable. Our Supreme

Court in *State v. Greenlee,* 228 Kan. 712, 620 P.2d 1132 (1980), considered standards and guidelines established by the legislature concerning diversion programs (K.S.A. 1979 Supp. 22-2907 and -2908). The Supreme Court said:

"In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time. *State, ex rel., v. Bennett,* 219 Kan. 285 [1976]." 228 Kan. at 716.

The second principle of law is that the sole power to provide for the punishment of offenders belongs to the legislature. *State v. Jones,* 214 Kan. 568, 570, 521 P.2d 278 (1974); *State v. Latham & York,* 190 Kan. 411, 422, 375 P.2d 788 (1962), *cert. denied* 373 U.S. 919 (1963).

Two states have considered the precise issue before us in cases involving overweight truck violations. In *People v. Wolfe,* 338 Mich. 525, 542, 61 N.W.2d 767 (1953), the court stated:

"It is not essential to the validity of a penal statute that the court imposing sentence be permitted to exercise discretion to some extent, or within prescribed limitations. . . . The fact that the legislature in the instant case saw fit to prescribe the penalty and to make the imposition mandatory does not render the statute under which defendant was prosecuted unconstitutional."

See also *State v. Seraphine,* 266 Wis. 118, 62 N.W.2d 403 (1954).

We are of the opinion the statute in question does not violate the separation of powers doctrine.

5. Excessive Fine.

Defendant argues the fine is so disproportionate to the crime that it should shock the conscience of the court, and thus is an excessive fine that is prohibited by section 9 of the Bill of Rights to the Kansas Constitution. Section 9 also forbids cruel or unusual punishment, and we are of the opinion the reasoning and standards set forth in *State v. Freeman,* 223 Kan. 362, and reaffirmed in *State v. McDaniel & Owens,* 228 Kan. 172, 180, 612 P.2d 1231 (1980), would also apply to fines. In *Freeman,* the Supreme Court said:

"Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (*State v. Coutcher,* 198 Kan. 282, 287, 424 P.2d 865 [1967]; *Cipolla v.*

*State* [207 Kan. 822, 486 P.2d 1391 (1971)] pp. 824-25; Anno: Cruel Punishment—Lenth of Sentence, 33 A.L.R.3d 335.)

"In determining whether the length of a sentence offends the constitutional prohibition against cruel punishment three techniques should be considered:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

Defendant argues that he did not endanger the public; that if there was damage to the highway or bridges, it could be recovered under K.S.A. 8-1913. He further argues that for a small fee (five dollars) it is possible to obtain, by telephone, a permit to move an overweight vehicle (K.S.A. 8-1911). The answer to defendant's argument, as we see it, is that the State does have legislative authority to use its discretion and grant permission to move an overweight vehicle over Kansas highways. That discretion, however, is tempered somewhat in that the permit is required to specify the route to be taken and the applicant may be required to provide security to compensate for any damage to a roadway or structure. In addition, the State can specify time limitations and conditions of operation. The obvious purpose of the permit is for the State to have an opportunity (1) to insure that the roads and bridges are capable of supporting the load, and (2) to observe whether any damage occurs during the movement.

Other states have considered the "excessive fine" argument as it applies to overweight truck prosecutions. In *Commonwealth v. Smith,* 409 Pa. 521, 525-26, 187 A.2d 267 (1963), the defendant challenged a $4,350 fine as excessive. The court held:

"The purpose of the overweight provision . . . is to protect the highways of the [state] from damage and to insure the safety of those traveling upon the highways [citations omitted]. The fine provision, of course, is designed to deter potential violators. It was quite evident to the . . . legislature that the $50 fine *for each violation,* imposed by the previous act, was not serving this function since the profits accruing from the excess loads more than compensated for the penalty inflicted. That legislature, therefore, decided to increase the amount of the fines and to graduate them according to the amount of the overweight, instead of

imposing a flat rate for each violation. Such a decision was not irrational or unreasonable, but on the contrary was quite sensible, and hence there is no merit to appellant's contention." (Emphasis original.)

See also *Commonwealth v. Mercer*, 294 Pa. Super. Ct. 544, 548, 440 A.2d 599 (1982), where the court held a fine of $3,900 not confiscatory:

"We find that the fine in question is a proper exercise of the police power of the [state], to preserve the safety of the travelling public and to maintain the roads of the [state] in a suitable condition."

In *People v. Wolfe*, 338 Mich. at 540-41, in upholding a fine of $2,050, the court stated:

"This question [excessive fine] necessarily involves a consideration of the purpose sought to be accomplished by the legislature and of the seriousness of the problem with which it undertook to deal. It is commonly recognized that heavily loaded trucks and trailers may, and do, cause serious damage to public highways. . . .

. . . .

"It may be assumed that the legislature in the enactment of the provision in question had in mind the practical necessity of providing penalties that would deter owners and operators of commercial vehicles from using the public highways of the State for the purpose of transporting quantities of merchandise of such weight as to be destructive to such highways, to the danger of traffic thereon and to the detriment of the public generally. In view of the seriousness of the problem it may not be said that the legislature has prescribed excessive fines by way of punishment, especially in view of the obvious fact that an owner or operator of such equipment may by the exercise of proper care avoid any violation of the statute.

. . . .

". . . The law may not be held invalid on the ground that in individual cases it may be difficult for one against whom the fine is assessed to make payment."

In *State v. Naczas*, 8 Wis. 2d 187, 189-90, 98 N.W.2d 444 (1959), the court stated:

"Within the bounds of constitutionality it is for the legislature to determine the mischief and the means used to deter offenders. . . .

. . . .

"The graduated scale of fines proportioned to the weight of the overload instead of the financial status of the loader does not shock public sentiment or violate the judgment of reasonable people concerning what is right and proper under the circumstances. It is the offense, overloading, which is to be prevented, by which the fine is to be measured, not the ability of the particular offender to sustain the penalty. The penalty is not to be varied or waived according to the wealth of the culprit."

In *State v. Trailer Service, Inc.,* 61 Wis. 2d 400, 212 N.W.2d 683 (1973), the court in upholding an $8,008 fine stated:

"Because the fine of $8,008 is substantial and no factual issue need be resolved, this court in the interest of justice will consider Trailer Service's claim that the fine is unconstitutionally excessive and not within statutory authorization, although the claim was not raised in the trial court. The argument based on an excessive fine has no merit. In *State v. Seraphine* (1954), 266 Wis. 118, 62 N.W.2d 403, the court considered this contention in respect to an overload violation and held the statutory scheme of graduated penalties and the particular fine involved were constitutional. *Also see: State v. Naczas* (1959), 8 Wis. 2d 187, 189, 190, 98 N.W.2d 444. In justifying a large overload fine, we stated it was justified on the implication of an intent to violate the law for mercenary motive; but this is only one justification. To determine excessiveness of a fine in a constitutional sense, consideration should be given 'to the object designed to be accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and the nature of the act for which it is imposed, and in some instances to the ability of the accused to pay.' 24B C.J.S., *Criminal Law,* p. 557, sec. 1978c. For a fine to be unusual or excessive, it must be so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances.

"It is argued Trailer Service had nothing to gain by the overload because its charge was based on an hourly rate and not on weight. But this is only one factor. The violation was serious. The public interest in the deterioration of its highways by overweight trucks is great and important. The object of graduated fines is to discourage violations which shorten not only the life of the highways but endanger the safety of the traveling public. A large overload is avoidable and it is practically impossible to check every truck on the highways for its weight load. To keep the potential threat of enforcement and the desire to obey the law through self-discipline, graduated fines in amounts far exceeding the payload are reasonable means of enforcement; such fines being not only a deterrent to the individual trucker but to the trucking industry generally." 61 Wis. 2d at 408-10.

See also *Austin v. Commonwealth,* 65 Pa. Commw. Ct. 434, 442 A.2d 832 (1982) ($20,250); *State v. Seraphine,* 266 Wis. 118 ($1,135.70); and *State ex rel. Hjelle v. A Motor Vehicle, Etc.,* 299 N.W.2d 557 (N.D. 1980) ($2,404).

After considering the purpose of the statute, and all of the factors suggested in *Freeman,* we hold that the fine imposed in this case was neither excessive nor cruel and unusual.

Affirmed.