522 A.2d 30

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Wayne E. CHURCH, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 17, 1986.

Decided March 10, 1987.

536

William M. Panella, Dist. Atty., Anthony J. Kosciuszko, Asst. Dist. Atty., New Castle, for appellant.

David Earl Henderson, New Castle, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellee, Wayne E. Church, pleaded guilty before a District Justice to a charge of violating Section 4902(a) of the Motor Vehicle Code,[1] which permits both the Common-

---

1. 75 P.S. § 4902(a) which provides:

   (a) *Restrictions based on condition of highway or bridge.*—The Commonwealth and local authorities with respect to highways and bridges under their jurisdictions may prohibit the operation of vehicles and may impose restrictions as to the weight or size of vehicles operated upon a highway or bridge whenever they determine that the highway or bridge may be damaged or destroyed unless use by vehicles is prohibited or the permissible size or weight

wealth and local authorities to post weight restrictions on certain highways and bridges. Section 4902(g)(1) of the Motor Vehicle Code,[2] imposes a rising scale of penalties for violating weight restrictions imposed or posted under Section 4902(a). In pertinent part, Section 4902(g)(1) reads, "... any person convicted of operating a vehicle with a gross weight in excess of a posted weight *shall*, upon conviction, be sentenced to pay a fine of $150 plus $150 for each 500 pounds, or part thereof, in excess of 3,000 pounds over the maximum allowable weight." (Emphasis added.) Under strict application of this formula to the facts of this case, Appellee's fine should have been $13,517.50, and this, indeed, was the fine imposed by the district justice. The matter was appealed *de novo* to the Court of Common Pleas of Lawrence County (Caiazza, J.), where Mr. Church again pleaded guilty. In spite of the mandatory nature of the sentencing statute, however, he was sentenced to pay a fine of only $3,000.00.

In ruling on this case, Judge Caiazza took into consideration Appellee's inability to pay the full fine required by the statutory formula, and reduced the fine accordingly. Authority for reducing overweight fines because of inability to pay was based on *Commonwealth v. Bundrant,* 29 D & C.3d 393 (Lawrence County), 1983.

In *Bundrant,* in an opinion also written by Judge Caiazza, it was determined that the mandatory fine provisions of the sentencing statute for overweight vehicles contained in

of vehicles is reduced. School buses, emergency vehicles and vehicles making local deliveries or pickups may be exempted from restrictions on the use of highways imposed under this subsection.

**2.** 75 P.S. § 4902(g)(1) which provides:

(g) *Penalty.—*

(1) Any person operating a vehicle or combination upon a highway or bridge in violation of a prohibition or restriction imposed under subsection (a) is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $75, except that any person convicted of operating a vehicle with a gross weight in excess of a posted weight shall, upon conviction, be sentenced to pay a fine of $150 plus $150 for each 500 pounds, or part thereof, in excess of 3,000 pounds over the maximum allowable weight.

the Motor Vehicle Code,[3] were inconsistent with portions of the Sentencing Code. One section of the Motor Vehicle Code, *viz.*, 75 P.C.S. § 6504(a)[4] which permits fines to be paid on the installment basis where a defendant is unable to pay all at once, contains a cross-reference to the Sentencing Code, specifically 42 P.C.S. § 9758.[5] This latter section also permits a fine to be paid in installments in appropriate circumstances. Judge Caiazza reasoned in *Bundrant* that since the Motor Vehicle Code makes this cross-reference to the Sentencing Code, other provisions of the Sentencing Code must also be taken into consideration.

The provision of the Sentencing Code that appeared most relevant and critical was 42 P.C.S. § 9726, which expressly permits a court to take into account a defendant's financial ability to pay in determining the amount of the fine to be imposed.[6] This provision was correctly found to be applica-

3. It was also 75 P.S. § 4902(g)(1) that was involved in *Bundrant,* itself.

4. 75 P.C.S. § 6504(a) provides:

(a) *Order for installment payments.*—Upon plea and proof that a person is unable to pay any fine and costs imposed under this title, a court may, in accordance with 42 Pa.C.S. § 9758 (relating to fine), order payment of the fine and costs in installments and shall fix the amounts, times and manner of payment. As amended 1978, Apr. 28, P.L. 202, No. 53, § 13(25), effective June 27, 1978; 1980, Oct. 5, P.L. 693, No. 142, § 402(b), effective in 60 days.

5. 42 P.C.S. § 9758 provides:

(a) *General rule.*—In imposing a fine the court shall at the time of sentencing specify the amount of the fine up to the amount authorized by law and shall provide when it is to be paid, and in the absence of statutory direction provide whether it is to be paid to the county or to the Commonwealth.

(b) *Installment payment.*—The court may permit installment payments as it considers appropriate to the circumstances of the defendant, in which case its order shall specify when each installment payment is due.

(c) *Alternative sentence.*—The sentence of the court may include an alternative sentence in the event of nonpayment.
1974, Dec. 30, P.L. 1052, No. 345, § 1, effective in 90 days. As amended 1980, Oct. 5, P.L. 693, No. 142, § 401(a), effective in 60 days.

6. 42 P.C.S. § 9726 provides:

(a) *Fine only.*—The court may, as authorized by law, sentence the defendant to pay a fine, when, having regard to the nature and

ble to offenses under the "Criminal Code" and to some violations of the Motor Vehicle Code, but not to the type of overweight violations of which the defendant in *Bundrant* had been convicted. Judge Caiazza concluded that some fines could be reduced because of inability to pay, and these would usually be fines imposed for serious offenses; but that other fines (usually for less serious "summary" offenses) could not be reduced because of inability to pay.

As a consequence, this state of affairs was found to constitute invidious discrimination under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Hence, the mandatory or irreducible aspect of the fine levied under 75 P.C.S. § 4902(g) in *Bundrant* was found to be unconstitutional. Once *Bundrant* was invoked, it was inevitable, under the reasoning of that case, that an identical finding of unconstitutionality would be reached with respect to the same statute at issue herein. The Commonwealth has appealed the instant decision directly to this Court as a matter of right under 42 P.C.S. § 722(7).[7]

circumstances of the crime and to the history and character of the defendant, it is of the opinion that the fine alone suffices.

(b) *Fine as additional sentence.*—The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when:

(1) the defendant has derived a pecuniary gain from the crime; or

(2) the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant.

(c) *Exception.*—The court shall not sentence a defendant to pay a fine unless it appears of record that:

(1) the defendant is or will be able to pay the fine; and

(2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

(d) *Financial resources.*—In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

1974, Dec. 30, P.L. 1052, No. 345, § 1, effective in 90 days. As amended 1980, Oct. 5, P.L. 693, No. 142, § 401(a), effective in 60 days.

7. *§ 722. Direct appeals from courts of common pleas*

For the reasons set forth below, we reject the conclusion that the sentencing statute at issue is unconstitutionally discriminatory. The decision of the Court of Common Pleas of Lawrence County must therefore be reversed.

■ There is no constitutional requirement that invalidates the imposition of an otherwise valid fine merely because a defendant lacks the immediate ability to pay it, or would have difficulty in doing so. In *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, *reh. denied*, 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973), Mr. Justice Powell stated:

> *Williams v. Illinois*, 399 U.S. 235 [90 S.Ct. 2018, 26 L.Ed.2d 586] (1970), and *Tate v. Short*, 401 U.S. 395 [91 S.Ct. 668, 28 L.Ed.2d 130] (1971), struck down criminal penalties that subjected indigents to *incarceration* simply because of their inability to pay a fine. Again, the disadvantaged class was composed only of persons who were totally unable to pay the demanded sum. Those cases do not touch on the question whether equal protection is denied to persons with relatively less money on whom designated fines impose heavier burdens. The Court has not held that fines must be structured to reflect each person's ability to pay in order to avoid disproportionate burdens. Sentencing judges may, and often do, consider the defendant's ability to pay, but in such circumstances they are guided by sound judicial discretion rather than by constitutional mandate. (Emphasis added.)

411 U.S. at 11–12, 93 S.Ct. at 1284–85.

There is, in the instant case, of course, no claim of total indigency, and no threat of incarceration. In *Common-*

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases: ...

(7) Matters where the court of common pleas had held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter....

*wealth ex. rel. Benedict v. Cliff,* 451 Pa. 427, 304 A.2d 158 (1973), Mr. Justice Nix, now Chief Justice, commenting on United States Supreme Court decisions in this area, held as follows:

> We believe that the [United States] Supreme Court has made it plain that a defendant may not be incarcerated merely because he cannot make full payment of fine. Therefore, we hold that the appellants must be given the opportunity to establish that they are unable to pay the fine. Upon a showing of indigency, the appellants should be allowed to make payments in reasonable installments. (footnote omitted.)

451 Pa. at 433–434, 304 A.2d 158.

The ability of a sentencing court to permit a fine to be paid off in reasonable installments, where necessary and appropriate, avoids, in our view, any claim of constitutional infirmity. As already referred to, of course, the trial court has expressed authority under the Motor Vehicle Code to permit the fine imposed in the instant situation to be paid off in installments where necessary. See, 75 P.C.S. § 6504(a).[8]

█ There is no constitutional requirement prohibiting the legislature from imposing a mandatory sentence where, in its judgment, such a sentence is necessary. See this Court's decision in *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), upholding the Mandatory Minimum Sentencing Act, 42 P.C.S. § 9712, which requires imposition of a minimum sentence of five years' total confinement upon persons found to have been in visible possession of a firearm during the commission of certain felonies.

There is no legitimate argument here to the effect that the rising scale of penalties for the type of overweight violation at issue is excessive under the Eighth Amendment. This Court rejected such a challenge to the overweight provisions of the Motor Vehicle Code in *Commonwealth v. Smith*, 409 Pa. 521, 187 A.2d 267 (1963). Mr. Justice

8. See Footnote No. 6 above.

Cohen's explanation of the legislative purpose behind the graduated fines is still sound. He stated:

> The purpose of the overweight provision of The Vehicle Code is to protect the highways of the Commonwealth from damage and to insure the safety of those traveling upon the highways.... The fine provision, of course, is designed to deter potential violators. It was quite evident to the 1955 session of the legislature that the $50 fine *for each violation,* imposed by the previous act, was not serving this function since the profits accruing from the excess loads more than compensated for the penalty inflicted. That legislature, therefore, decided to increase the amount of the fines and to graduate them according to the amount of the overweight, instead of imposing a flat rate for each violation. Such a decision was not irrational or unreasonable, but on the contrary was quite sensible, and hence there is no merit to appellant's contention.

409 Pa. at 525–526, 187 A.2d 267.

■ That the amount of the overweight fines, and each increment thereof, has risen since *Smith* was decided, does not, in our view, affect the analysis or alter the result in *Smith* unless it could somehow be shown that the amount of the fines was so great as itself to be confiscatory and beyond the bounds of all reason and justice. No such showing has been made here. Moreover, the amount of a fine need not be limited to the cost incurred by the Commonwealth for each violation. As Mr. Justice Jones stated in *Mastrangelo v. Buckley,* 433 Pa. 352, 250 A.2d 447 (1969):

> A fine or penalty differs substantially from a license fee. It is self-evident that a City in enforcing and collecting a fine or penalty incurs expense, an expense the fine is intended to recover. However, the primary purpose of a fine or a penalty is twofold; to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to

discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution. Thus, if the City finds that it costs $1.00 to enforce each parking violation, it is not restricted to imposing a $1.00 parking fine, if the payment of such an amount will not discourage illegal parking.

Appellee cannot claim that his violation was trivial or his fine excessive or unfair merely because his particular overweight load might not have caused damage to the highways equal to the amount of the fine incurred.

In *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, *reh. denied*, 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763 (1959), Mr. Justice Whittaker held that, "the Due Process Clause of the Fourteenth Amendment does not, nor does anything in the Constitution, require a State to fix or impose any particular penalty for any crime it may define or to impose the same or 'proportionate' sentences for separate or independent crimes." 358 U.S. at 586, 79 S.Ct. at 427. The jist of Appellee's position, based on *Bundrant, supra*, is that it is unconstitutional discrimination under the Equal Protection Clause to permit a fine imposed for a serious crime to be reduced because of inability to pay, but not to permit a fine imposed for a less serious crime to be so reduced. In *Bundrant*, the trial court contrasts the overweight violation at issue there, a summary offense, with two "serious traffic offenses"[9] in the Motor Vehicle Code, both of which were fully punishable at the time under the Sentencing Code, *viz.*, driving under the influence of alcohol or controlled substance;[10] and homicide by vehicle.[11] In imposing a fine for either

9. So labeled under Subchapter B of the Motor Vehicle Code.

10. 75 P.C.S. § 3731. As amended 1982, Dec. 15, P.L. 1268, No. 289, § 9, the statute now provides mandatory minimum penalties of fine and imprisonment. Subsection (e)(3) was also added to § 3731 which expressly provides that the sentencing code shall not supercede the mandatory penalties.

11. 75 P.C.S. § 3732. A first degree misdemeanor, punishable under 18 P.C.S. § 106(b)(6) by a maximum term of imprisonment of not

544

offense, a trial court, could not, at the time *Bundrant* was decided, levy any fine if the financial circumstances of a defendant did not permit the imposition of a fine; and if the financial status of a defendant did permit the imposition of a fine, the amount of same would be affected by the financial ability of the defendant to pay.

In levying a fine for an overweight violation, however, the trial court was not afforded the right to consider the financial plight of the defendant. Admitting that a classification having some reasonable basis is not constitutionally offensive merely because it is not made with mathematical nicety or even because the effect results in disparity, nevertheless, the trial court failed to recognize any reasonable basis for the classifications it discussed in *Bundrant.* Since the primary purpose of the Motor Vehicle Code and its amendment is to protect the public safety, the trial court reasoned that every provision of the code is to be interpreted in the light of that intent. In *Bundrant,* Judge Caiazza found no reasonable basis to treat an individual found guilty of an overweight violation differently than an individual who has been found guilty of vehicular homicide or driving while under the influence of alcohol, since, in each instance, the violator performed an act aimed at destroying the public safety. Hence, the ability of the court to reduce fines in "serious" cases, but not in overweight cases was thought to constitute invidious discrimination. The argument is fatuous.

It is recognized that the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes and designate the procedure applicable at trial and after sentence. *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985); *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114 (1959); *Commonwealth v. Cano,* 389 Pa. 639, 133

more than five years; and under 18 P.C.S. § 1101(3) by a fine not exceeding $10,000.

A.2d 800 (1957); *Commonwealth v. Sweeney*, 281 Pa. 550, 127 A. 226 (1924); *Commonwealth v. Kalck*, 239 Pa. 533, 87 A. 61 (1913).

■ Statutory classifications, however, must conform to the provisions of the Equal Protection Clause of the Fourteenth Amendment. The classification must be reasonable and not arbitrary, and must rest upon some rational difference having a fair, substantial and reasonable relationship to the objective or objectives of the legislation at issue so that all persons similarly situated will be treated alike. See, *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, at 67, 436 A.2d 147, at 155 (1981).

■ Applying the so-called "rational basis" test here, it is readily apparent that the legislative scheme or classification, whereby overweight fines cannot be reduced or forgiven because of inability to pay, is not arbitrary, and bears a perfectly rational relationship to a legitimate government interest.

It is hard to see how non-reducible overweight fines are discriminatory or disproportional to the penalties for the admittedly serious crimes of driving under the influence or homicide by vehicle when those crimes may be punished by a term of imprisonment. Most people would regard imprisonment as the more severe penalty.

Almost all vehicles stopped for substantial overweight violations will be commercial vehicles engaged in the business of transporting goods for hire. As we pointed out in *Smith, supra*, the graded fines imposed for driving overweight vehicles are obviously designed to deter these types of violations by removing the motive to transport large overloads, for a high profit, while only risking a relatively small fine. The legislature must certainly be permitted to assume (as we assume) that being able to plead inability to pay would seriously dilute the deterent effect of the heavy fines. Given the nature of the businesses that might be tempted to engage in overweight hauling, it will often happen that companies or drivers, at given points in time,

will be able to plead at least a temporary inability to pay. The legislature is certainly entitled to presume that this "loophole" might often become big enough to "drive a truck through" where the argument is presented to overly sympathetic judges or district justices. It is perfectly proper for the legislature to impose fines that may under some circumstances be delayed, but can in no way be avoided, in order to deter conduct such as the gross overweight violations involved here. Such violations are often knowingly calculated and premeditated for business reasons by the offenders. We think such a scheme is perfectly rational and well within the discretion of the legislature to enact.

The statute here is designed not only to deter, but to punish as well. There has historically been a reluctance in this country to levy a fine or confiscate property for even the most serious criminal violations.[12] This reluctance may be based on the notion that individuals are morally responsible for their conduct and that we should avoid, where possible, punishments that directly affect property assets shared with family members and dependents. Various reformers have deplored this tendency from time to time. However, such reluctance has not occurred with respect to business crimes or crimes against property, as happened here. (Running overweight vehicles as a calculated business risk certainly damages the public highways which are public property.) The punishment of a mandatory fine which a violator knows must be paid out of current or future profits is reasonable and well within the discretion of the legislature for the types of essentially business-related offenses involved herein.

For the reasons set forth above, the instant judgment must be reversed, and this case must be remanded to the Court of Common Pleas of Lawrence County for re-sentencing and other further proceedings as may be necessary, not inconsistent with this opinion.

It is so ordered.

12. See, Kittrie and Zenoff, *Sanctions, Sentencing and Corrections* (Foundation Press, 1981), pp. 433–4.